H. Norman Brown and Susannah G. Brown v. Commissioner.
Brown v. Commissioner
Docket No. 7383-70.
United States Tax Court
T.C. Memo 1972-114; 1972 Tax Ct. Memo LEXIS 138; 31 T.C.M. (CCH) 457; T.C.M. (RIA) 72114; May 22, 1972, Filed *138 Participants in the educational leave programs of the West Virginia Department of Welfare and the Florida Department of Public Welfare received monthly stipends. In order to receive such stipends, each participant promised to enroll in an accredited school of social work and, either to return to work for the grantor agency for a specified period of time upon completion of his leave, or to repay the moneys advanced to him. Held, the stipends are not excludable from income as scholarship or fellowship grants under sec. 117, I.R.C. 1954
H. Norman Brown and Susannah G. Brown, pro se, 1018 S. Carrollton, *139 New Orleans, La.Paul H. Waldman, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined the following deficiencies in the petitioners' income taxes: Petitioner
Year
Amount
H. Norman and Susannah G. Brown
1967
$604.47
H. Norman Brown
1966
429.52
Susannah G. Brown (For- merly Susannah G. Simonis)
1966
239.62 The only issue for decision is whether certain amounts received by the petitioners are excludable from income as scholarship or fellowship grants within the meaning of section 117 of the Internal Revenue Code of 1954. [1]
Findings of Fact Some of the facts were stipulated, and those facts are so found. The petitioners, H. Norman and Susannah G. Brown, maintained their residence in New Orleans, Louisiana, at the time the petition was filed in this case. They filed their 1967 joint Federal income tax return with the Internal Revenue Service Center in Cincinnati, Ohio. Mr. Brown and Mrs. Brown (then Miss Simonis) filed 1966 individual Federal income tax returns with the Internal Revenue *140 Service Center in Austin, Texas. Mr. Brown began working for the West Virginia Department of Welfare (WVDW) on March 15, 1963, as a Social Worker II in the Division of Child Welfare. In 1965, Mr. Brown began attending Tulane University School of Social Work as a participant in WVDW's educational leave program. A tuition and book allowance and a monthly stipend were provided by WVDW to each participant, and each participant was required to sign a contract stipulating that he would provide a minimum of a month of employment in the WVDW for each month spent in advancing his educational degree. On July 26, 1966, Mr. Brown's request for additional educational leave to complete his masters degree was approved. The approval was based upon an evaluation of Mr. Brown's school work during the previous year and the recommendation of a District Administrator of WVDW. The letter of approval stated that his monthly stipend would be two-thirds of his adjusted salary, or $323.33 per month, and that 458 Federal and State income taxes, social security, and retirement would be withheld from such stipend. The letter also stated that the stipend was includable in taxable income and that he would *141 not accumulate annual or sick leave while on educational leave, but that the holdays observed by the college were to be substituted for his annual leave. On July 28, 1966, Mr. Brown signed an educational leave contract for 1966-67. Under the contract, he received a tuition and book allowance and a monthly stipend, and he promised to return to the employ of WVDW immediately upon completion of his studies and to remain in WVDW's employ for a period of time equaling the period of time of his educational leave. If he did not return to WVDW's employ, or terminated his employment before the required period of time, or performed his work unsatisfactorily, he was required to repay the amounts advanced to him. The contract also provided that Mr. Brown would return to a position not lower than the level previously held by him, but in actuality, most employees received promotions when they returned. Except for work during the summer recess, Mr. Brown did not perform any services for WVDW during the period he was on educational leave, but he did receive certain employee fringe benefits such as the accumulation of seniority. While he was studying at Tulane University, WVDW's personnel maintained *142 personal contact with Mr. Brown, and after each semester, reports were sent on his progress to WVDW. Although it required that he attend a college accredited by the National Council of Social Work Education, WVDW did not choose or review the exact course content of Mr. Brown's program. After he completed his master's program, his combination of experience and education made it possible for Mr. Brown to qualify for promotion to a Social Worker IV in WVDW. Since 1962, four participants in the program have not returned to work for WVDW, and seven others have not completely fulfilled their obligation to serve for the agreed-upon period. When such obligation is not fulifilled and the money advanced is not repaid, the case is referred to the West Virginia Attorney General for collection of the amounts due. However, since many of those who do not fulfill their obligations leave the State, and since it is difficult to bring action against such persons, most repayments have been secured by negotiation. Mrs. Brown began work for the Florida Department of Public Welfare (FDPW) in September 1964 as a member of the Child Welfare Unit staff. On September 30, 1966, she signed a contract entitled *143 "Educational Leave Scholarship Agreement." It provided in relevant part that: The Department of Public Welfare * * * has granted Susannah G. Simonis, also known as the employee, educational leave with scholarship for the purpose of attending a graduate professional school, in order to increase * * * her skills in the performance of * * * her duties with the Department. The scholarship shall be for the academic year of the school to be attended and the employee will be paid by the Department on the basis of three-fourths of * * * her total salary during the term of the scholarship. The total amount expended is subject to Federal income tax and retirement deductions. The employee agrees to return to the employment of the Department for a period of twelve months, unless otherwise released from this obligation in writing. * * * The Department may withdraw the scholarship at the end of the current term or semester if the school reports that the work of the employee is unsatisfactory. If the employee should fail to complete the stipulated number of months employment following * * * her return from school, * * * she agrees to repay the the amount of the scholarship money paid to * * * *144 her in the proportion that the total amount of money received by * * * her bears to the unserved portion of the number of months * * * she agreed to work. * * * If the Department refuses to employ the employee for any part of the stipulated twelve months, * * * she may be released from all obligations to reimburse the Department. * * * While Mrs. Brown was in school at Tulane University, correspondence between FDPW and Mrs. Brown was routine, and the school sent a report on Mrs. Brown's progress to FDPW. During her time at school, she met Mr. Brown, and they became engaged. She then wrote to FDPW that she was going to get married in August 1967 and that she could work for 6 weeks that summer. She was told that she could not be used for such a short 459 period of time and that she was responsible for repaying her stipend. After repaying a portion of the stipend, she contacted a lawyer who wrote to FDPW. Since that time, no additional repayments have been made. On their joint Federal income tax return for 1967, the petitioners excluded $3,500 from their gross income as being educational stipends from FDPW and WVDW. On his individual Federal income tax return for 1966, Mr. Brown *145 excluded $2,603 as being a stipend from WVDW, and on her individual return for 1966, Mrs. Brown (Miss Simonis) excluded $1,263 as an eudcational stipend. In his notice of deficiency du, the respondent determined that these stipends were not excludable from gross income under section 117, but were taxable income pursuant to section 61. Opinion The only issue for decision is whether certain amounts received by the petitioners are excludable from income as scholarship or fellowship grants. Section 117(a) provides that amounts received as a scholarship or fellowship grant are not taxable. However, section 1.117-4(c)(1), Income Tax Regulations, provides that except in the case of certain Veteran allowances, the amount paid or allowed to an individual to enable him to pursue his studies is not excludable from gross income, if such amount represents "compensation for past, present, or future employment services." Such regulations have been approved by the Supreme Court, which stated, "bargained-for payments, given only as a 'quo' in return for the quid of services rendered - whether past, present or future - should not be excludable from income as 'scholarship' funds." Bingler v. Johnson, 394 U.S. 741, 757-758 (1969). *146 Thus, where a social worker receives an educational stipend from his employer in return for his promise to return to work for his employer for a specified period of time, the courts have uniformly held that the stipend is not excludable from income. Ward v. Commissioner, 449 F. 2d 766 (C.A. 8, 1971), affg. per curiam, 55 T.C. 308 (1970); Stewart v. United States, 363 F. 2d 355 (C.A. 6, 1966), cited with approval in Bingler v. Johnson, supra; Jerry S. Turem, 54 T.C. 1494 (1970); Marjorie E. Haley, 54 T.C. 643 (1970). In the present case, the stipends are the quo and the quid is the promise to perform future services or repay the money. See Bingler v. Johnson, supra. It is contended however that Mrs. Brown neither performed future services nor had an obligation to repay the money. In arguing that Mrs. Brown's stipend was not repayable, the petitioners rely on the sentence in the educational leave contract which states, "[if] the Department refuses to employ the employee for any part of the stipulated twelve months, she may be released from all obligations to reimburse the Department," and *147 on the fact that when Mrs. Brown offered to work for 6 weeks her offer was refused. We reject this contention. We need not decide whether the State forfeited its right to collect the repayments from Mrs. Brown by its refusal to employ her for a 6-week period. The contract imposed on Mrs. Brown the obligation to work for 1 year or repay the money advanced to her. Thus, when the stipend payments were made to Mrs. Brown, she was obligated to perform future services in return for such payments, or to repay them. The State of Florida had a right to demand future services of her. Because of that right, the payments to Mrs. Brown were compensatory, irrespective of whether the State ultimately enforced its right, or waived it. See Ward v. Commissioner, supra; Leonard T. Fielding, 57 T.C. - (March 13, 1972). The petitioners also contend that the stipends received by them were not compensation because their education was not for the benefit of their employers, but was for their own benefit. Although the petitioners undoubtedly enhanced their skills as a result of their education at Tulance, statements by officials of the West Virginia and Florida programs make it clear that the *148 primary purpose of the programs was to improve the services provided by WVDW and FDPW. For example, a WVDW official stated that the West Virginia program was to "meet the [Federal] regulations * * * regarding social work performance," and FDP official stated that the purpose of the Florida program was "to provide better services through [a] better prepared staff." Furthermore, we believe the payments were made so as to ensure that they would primarily benefit the agency from which leave was taken. Jerry S. Turem, supra at 1505. An official of WVDW stated that WVDW "attempted to impart to employees requesting educational leave that an employer-employee relationship existed" while the employees were 460 on educational leave, and the Florida educational leave contract referred to Mrs. Brown as the employee. Even though the petitioners did not perform any services for their employers while on leave, they did receive certain, although apparently not all, of the fringe benefits which they would have ordinarily received as employees. Under each program, reports were received on the participant's progress and personal contact was maintained with the participant. Similarly, *149 the selection of a school under both programs was limited to one approved by the National Council of Social Work Education. The approval of Mr. Brown's second year of studies was based in large part on his first year's performance, and Mrs. Brown's stipend could have been withdrawn if the school had reported that her work was unsatisfactory. Upon the completion of either program, the participant was required to return to work for the agency from which leave was taken. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩